UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JACK D. LIFFITON

                Plaintiff,

Vs.

DETECTIVE SHERRY KISZEWSKI,
DECTIVE ROANLD BARRETT,
JOHN DOE AND JANE DOE
SUPERVISORY PERSONNEL
OF THE BUFFALO POLICE
DEPARTMENT NOT YET IDENTIFIED,
COUNTY OF ERIE AND JOHN DOE ERIE
COUNTY DEPUTY SHERIFFS YET TO BE
IDENTIFIED

Index No. **09 CV 0994**

COMPLAINT



---

Plaintiff, Jack D. Liffiton, for his complaint against the defendants alleges as follows:

### JURISDICTION

1. This court has jurisdiction under the Fourth, Eight and Fourteenth Amendments to the U.S. Constitution pursuant to 42 USCA 1983.

### VENUE

2. Venue is vested in this district in that the illegal acts of the defendants occurred within the Western District of New York.

### PARTIES

3. Plaintiff, Jack. D. Liffiton, at all times relevant herein was a citizen of the State of New York, County of Erie residing at 47 Sandlewood Drive, Getzville, N.Y.

4. Defendant, Sherry Kiszewski, at all times relevant herein was a detective employed by the City of Buffalo Police Department with headquarters at 74 Franklin Street, Buffalo, New York

5. Defendant, Ronald Barrett, at all times relevant herein was a detective employed by the City of Buffalo Police Department with headquarters at 74 Franklin Street, Buffalo, New York.

6. Defendants John Doe and Jane Doe supervisory personnel of the Buffalo Police Department at all time relevant herein were employed by the City of Buffalo Police Department and acted in a supervisory capacity over the above referenced detectives.

7. Defendant County of Erie at all times relevant herein was the employer of the sheriff's deputies assigned to the Erie County Holding Center who exercised dominion and control over the plaintiff during his incarceration. Defendant County of Erie is being sued under the doctrine of Respondeat Superior.

## STATEMENT OF THE FACTS

8. On November 18, 2006 at approximately 5:30p.m., the plaintiff went to the lower apartment at premises known as 717 LaSalle, Buffalo, N.Y. to begin the eviction process to remove Pamela Morse by serving her with a 3 day Notice to Quit.

9. Upon serving the notice, the plaintiff suggested to Morse that she should contact the rental office in Rochester and try to "work something out". Morse said she would call the

office the following morning. Thereafter the plaintiff left.

10. On November 20, 2006, at approximately 3:00p.m., the plaintiff retrieved a call on his home answering machine from defendant Kiszewski who asked that he return her call.

11. The plaintiff contacted defendant Kiszewski and learned that Pamela Morse had filed a criminal complaint that alleged that he had broken into her apartment and had "inappropriately touched her".

12. As a result, defendant Kiszewski told the plaintiff that he needed to come to her office and "sign a statement" giving his version of the facts. The plaintiff then told defendant Kiszewski that the allegations of Pamela Morse were contrived and were in retaliation for the eviction proceedings and he requested more particularity. Defendant Kiszewski said that she was not going to discuss the case over the phone and told the Plaintiff he could tell his side of the story when he came to her office.

13. The plaintiff advised that he had to come downtown on Wednesday, November 22, 2006, at 9:30 a.m. to appear in State Supreme Court in a dental malpractice case and he could come to her office after that proceeding which would be about 10:30a.m.

14 Defendant Kiszewski said that would be fine and the conversation was concluded.

15. The following morning, the plaintiff called defendant Kiszewski and advised that the lawyer who was handling the eviction of Pamela Morse could not get downtown to file the eviction papers and had asked him to come by his office at 10.30. a.m..to pick up

the papers and take them downtown for filing.

16. Because he was going to be downtown, the plaintiff suggested that he could come to her office after he had filed the papers which he anticipated would be around 11:15 a.m. At first, she said she had prior commitments but after checking, she said she would rearrange her schedule and would expect the plaintiff around 11:15.a.m

17. The plaintiff then said, " I will see you around 11:15a.m" and the conversation concluded.

18. When the plaintiff went to the lawyers office to pick up the eviction papers for filing, he was advised that an emergency had cropped up and the papers were not ready.

19. The plaintiff then called defendant Kiszewski and advised her what had transpired and that he would not be coming downtown that morning as anticipated . She seemed perturbed and told the plaintiff that she had called someone in on overtime so that she could meet with the plaintiff.

20. At that point, the plaintiff became suspicious and feared that when he appeared at her office, defendant Kiszewski might arrest him on the spot so he asked her, "you don't have a warrant for me do you"? She responded by saying "no" The plaintiff then went on to say "how does this process work after I sign the statement"?

21. She responded by saying that "the criminal complaint and your statement would be given to the district attorney and he would decide how to proceed.

22. Based on that representation, the plaintiff was somewhat relieved and said that he

would come to her office as originally planned the following day at approximately 10:30 a.m. after his appearance in State Supreme Court in the dental malpractice action.

23. That afternoon, the plaintiff received a call from the attorney representing the defendant in the malpractice action indicating that Judge Burns had called him and asked him to contact me and set up a meeting to try and work out a stipulation so the court appearance was canceled. The attorney advised that he would contact me after Thanksgiving to arrange the meeting

24. At approximately 3:30 p.m., the plaintiff called defendant Kiszewski who was unavailable and left a message on her answering machine to advise her what had transpired and as a result, he would not be coming downtown the following day as planned and indicated that he would prepare a statement giving his version of the facts and fax it to her the following morning.

25. The plaintiff went on to say that if the statement needed any amplification they could discuss it over the phone and the statement could then be modified, signed and delivered.

26. The following morning the plaintiff left his house for work at approximately 6:00 a.m. and came home at approximately 10.30a.m. to fax the statement to defendant Kiszewski.

27. At the plaintiff pulled into the driveway, defendants Kiszewski and Barrett were standing in the driveway alone side of their car.

28. After the defendant's introduced themselves, the plaintiff asked defendant Kiszewski if she had received the message he left on her answering machine the previous day about the faxing of his statement. She acknowledged that she had and the plaintiff then asked for more particularity regarding the charges. She then told him to get out of the truck and to put his hands on the hood of the truck and that he was under arrest.

29. The plaintiff asked what he was being arrested for and defendant Kiszewski said, "I haven't figured it out yet but I'll let you know".

30. After being searched, defendant Barrett handcuffed the plaintiff and put him in the rear seat of their car.

31. Shortly thereafter, the plaintiff advised defendant Barrett that the handcuffs were too tight as they were hurting his wrists and that his fingers were "tingling". He asked him to loosen them a bit but efendant Barrett refused and said: "shut up" and both he and defendant Kiszewski laughed.

32. En route to the police station, the plaintiff pointed out to both defendants that the speedometer showed that they were traveling at 75 mph on route 33 which was unsafe and in violation of the law. Defendant Barrett said "shut up" and again they both laughed.

33. A few minutes later the plaintiff advised defendant Barrett that the handcuffs were really painful and his fingers had become numb to which said, "I told you to shut up about the handcuffs" and again they both laughed.

34. After having been "booked" at approximately 11:30 a.m., the plaintiff was placed

in a small cell, approximately 8 x 10 with 15 other prisoners that grew to approximately 20 over a 6 hour period. The jailers refused to provide the plaintiff with lunch and at approximately 5 p.m., the plaintiff was taken to a larger cell with approximately 23 prisoners and given a mattress but no pillow or blankets and the lights were kept on all night. As a result, the plaintiff was unable to sleep.

35. At arraignment the following morning, district attorney advised the court that the defendant was charged with 1 count of felony burglary and 2 counts of sexual abuse in the third degree and he asked the judge for a $50,000 bail.

36. The plaintiff was represented by the public defender and he told the judge that the felony complaint filed by Pamela Morse was a total fabrication and was an attempt to stave off her eviction. The judge released the plaintiff on his own recognizance apparently sensing that the felony complaint was filed in retaliation fro the evict ion proceedings.

37. Shortly thereafter, the plaintiff met with the public defender and for the first time saw the felony complaint sworn to by Pamela Morse. The plaintiff was surprised to learn, that Morse alleged that he had illegally entered her apartment on November 15, 2006 between 5:00p.m. and 6:00p.m. and sexually assaulted her, since the plaintiff had been in the company of two alibi witnesses at that time. More surprising, was her additional allegation that at approximately 10:30p.m. on November 18, 2006, the plaintiff came to her apartment and again sexually assaulted her since at that time the plaintiff was home in bed asleep.

38. On December 7, 2006 the plaintiff appeared in court and the district attorney asked for an adjournment since Morse failed to appear. The case was adjourned to December 18, 2006, at which time the judge set January 23, 2007 for motions and a trial.

39. Shortly thereafter, the plaintiff learned from a credible source that a former part time rental agent who had worked for the plaintiff and was fired for stealing rents, had encouraged Pamela Morse to file the fabricated statement with defendant Kiszewski with the hopes that they could extort $5,000 from the plaintiff to "make the case go away".

40. The plaintiff obtained a sworn affidavit from a party to whom the aforementioned former rental agent had admitted that he had encouraged Pamela Morse to file the falsified statement that was used as a basis by defendant Kiszewski to file the felony complaint.

41. On January 23, 2006, the plaintiff appeared in court but Pamela Morse failed to appear so the judge said he was placing the case on the reserve calendar and if the district attorney failed to make a motion to restore it to the trial calendar by February 22, 2007, the case would be dismissed and the record sealed.

41. On February 22, 2007, with no motion by the district attorney to restore the case to the trial calendar, the case was dismissed and the record was sealed.

## AS AND FOR A FIRST CAUSE OF ACTION

42. Plaintiff repeats, reiterates and re-alleges each and every allegation in paragraphs 1 through 41 with the same force and effect as if more fully set forth at length herein.

43. By arresting the plaintiff without a warrant and solely on the basis of a falsified sworn statement by Pamela Morse whose credibility was suspect since she was being evicted, and having conducted no investigation to corroborate her allegations, the defendants lacked probable cause to support the warrantless arrest which violated the rights of the plaintiff guaranteed under the Fourth Amendment of the U.S. Constitution.

## AS AND FOR A SECOND CAUSE OF ACTION

44. Plaintiff repeats, reiterates and re-alleges each and every allegation in paragraphs 1 through 43 with the same force and effect as if more fully set forth at length herein.

45. Defendant police officers applied and maintained over time a level of pressure on plaintiff's handcuffs that was objectionably unreasonable under the circumstances causing the plaintiff pain and suffering which violated the plaintiff's rights under the Eight Amendment.

## AS AND FOR A THIRD CAUSE OF ACTION

46. Plaintiff repeats, reiterates and re-alleges each and every allegation in paragraphs 1 through 45 with the same force and effect as if more fully set forth at length herein.

47. By failing to feed the plaintiff lunch, Erie County Sheriff's Department violated the plaintiff's rights under the Eight Amendment.

## AS AND FOR A FOURTH CAUSE OF ACTION

48. Plaintiff repeats, reiterates and re-alleges each and every allegation in paragraphs 1 through 47 with the same force and effect as if more fully set forth at length herein.

49. By confining the plaintiff in a room approximately 8 by 10 room with approximately 20 other inmates for 6 hours with poor ventilation the Erie County Sheriff's Department violated the plaintiff's rights under the Eight Amendment.

## AS AND FOR A FIFTH CAUSE OF ACTION

50. Plaintiff repeats, reiterates and re-alleges each and every allegation in paragraphs 1 through 49 with the same force and effect as if more fully set forth at length herein.

51. By failing to give the plaintiff a blanket, pillow and keeping the lights on all night, the Erie County Sheriff's Department violated the plaintiff's rights under the Eight Amendment.

WHEREFORE, plaintiff Jack Liffiton demands judgment as follows:

  a. First cause of action – compensatory damages in the amount of $25,000 and punitive damages in the amount of $75,000

  b. Second cause of action- compensatory damages in the amount of $10,000 and punitive damages in the amount of $30,000.

  c. Third cause of action – compensatory damages in the amount of $20 and punitive damages in the amount of $60.

  d. Fourth cause of action – compensatory damages in the amount of $5,000 and punitive damages in the amount of $15,000.

  e. Fifth cause of action – compensatory damages in the amount of $5,000 and punitive damages in the amount of $15,000.

Together with the costs and disbursements of this action and attorney fees allowable under 42 USCA 1988

Dated: November 12, 2009

Jack Liffiton
47 Sandlewood Drive
Getzville, N.Y. 14068
(716) 688-7444